Good morning, Your Honor, and may it please the Court, I'm Lance Orloff. I represent California Capital Insurance Company, the appellant, and I will reserve five minutes for rebuttal. In the argument regarding the other insurance endorsement that's at issue before the Court, California public policy is set forth by the California Supreme Court in the Dart v. Commercial Union case is basically that an insurer that accepts a premium to cover a risk must share in the liability of a co-insured and cannot, with language between the company and the co-insured, escape that liability. So California... Does that mean you can't have an excess policy? You can have an excess policy if you write an excess policy and charge a premium for an excess policy, but when two primary policies are involved covering the same person, then one of the primary insurers with language in their policy cannot, in effect, when there's the co-insured situation, escape its liability because the other insurance is present. How do you explain Hartford? Weren't they both primary insurance? They were, but as with everything in the world, there's always exceptions to the general rule or else attorneys wouldn't have, you know, much to do. So why isn't this case in the exception carved out by Hartford? Because Hartford and the other cases that a small sliver of the insured's liability was written into the other insurance clause to only render the other insurance or that insurance excess in those particular situations. And in Hartford, there was a one landlord and one tenant bargained for the landlord having no liability at all when the accident or event happened in the tenant's work area or tenancy space. So the insurance company carved out a small portion of that landlord's total liability having to do with that particular tenant. So the carve out here was definitely broader. But do we have any case that tells us that a carve out can only be so broad? What case can we look at to figure out whether, even though this is broader, it's so much broader that it takes us out of Hartford? Well, that's why I cited those cases from the district courts that have confronted this. For instance, in the case that's in the briefs where they said that there would be excess only if there was an event occurring on a water boat or a water craft. They carved out that. And the other one was a small portion as well. Right. It seems like we have a bit of a no man's land here, though. So we have cases that have small carve outs. And then we have cases where there's no carve out. You can't enforce the two. But here we're somewhere in the middle. And I wonder if are there any cases that weren't in your brief that you can point us to that help us figure out this middle that we're in with this case? No, because I don't believe, or I would submit that we're not in the middle, that we're all on the other side. Well, if you were the California Supreme Court, which is our Bible in these cases, how would you write your opinion that would make the distinction that you're making? Well, the California Supreme Court has never weighed in on these targets. No, I'm asking you. I know that. Yeah, I think the California Supreme Court would say it has to be a bargain for and it has to be clear and conspicuous that a small portion is being written out of it. So what would small be defined as? That's the problem. What is small? Or let's just say, let's take this case as an example. If Sierra Pacific Management Company, its primary book of business was that it owned its own rental properties and managed its own rental properties. And it also had a small book of business, say 10% or something of that nature, where it managed rental properties for other owners. And the insurance company came in and said, we will cover you as a primary policy for the 80, your 80 or 90 percent of your business, but we don't want to, we want to be excess in the 10% situation where you're covered by the insurance. Then they could write it where it says, as they attempted to here, and say, well in those situations where you're managing for third parties, we're excess to that. I'm not understanding what the standard is. Well, I guess the standard is... I can understand you can write another case that you think would be stronger, but I, I mean is it 10%? Is it 50%? Is it anything less than 100%? I'm not sure how we're supposed to figure out what the line is. I guess that would, you know, if there was a clear-cut rule, there would be a lot less for judges to do in that situation, but there isn't. But the clear-cut rule to me would be if you do a carve-out that says we are limiting it to these situations. And that's what we seem to have here. That's the problem. Well, the problem is, is that it doesn't. There is no carve-out here because Sierra Pacific only manages properties that other people own. So... This is a disconnect that I don't understand in the way that this case has been briefed, because I thought everyone agreed that they have some, like administrative offices, where they're covered in terms of any accident that happens in these administrative offices that really aren't about property management. And it seems like you've been kind of denying that, but I don't understand why. Because there's a difference, and I think the briefs are misleading in that way. You know, Attain talks about, for instance, premises liability versus the general negligence. Premises liability refers to when an owner or occupier is liable by virtue of the fact that it owns or occupies the land, and it has a non-delegable duty. Now, in this case... But, so they have some administrative offices, and if someone falls in one of those, then there's primary insurance for that issue, and that's not about property management. Right, but they accepted premiums far in excess of the premiums that California Capital charged to insure two parties. They... But that's not true either, I don't think. They have 400 or 300 properties they manage, and these home offices, and they only charge double the premium for all of that than your company did for one property. So why doesn't that show us that the bargain here was for excess insurance? Right, and general policies have endorsements which are called scheduled property endorsements, which say we only provide coverage for accidents that occur on this property. That's not in this case. So you're saying insurance didn't cover all the... Oh, I'm sorry. Judge Torreo, go ahead. Well, I'm having a little difficulty, perhaps because of my lack of knowledge of California law, but as I read this policy, the attains policy, they have a real estate property management endorsement, which reads, with respect to your liability arising out of your management of property for which you are acting as real estate manager, this insurance is excess over any other valid collectible insurance available to you. Why isn't this clause beside this because it's an escape clause under the California Supreme Court's analysis in the Dart case because this is real estate, it's business in which Sarah Pacific is acting as real estate manager, is the entire, their they are in effect claiming themselves as excess over other policies on the entire business that Sierra Pacific engages in. But what about those home offices? I don't understand, you keep insisting that it is the entire business, but this insurance covers more than that. It covers someone falling in the But that's, they're not in the business of maintaining their own offices. Well, but they need insurance just like anyone else does, so they have insurance for that, and that is part of this policy, is it not? And then the policies will, in effect, when you buy a policy that only covers your office space, it'll say we only cover your office space. It doesn't say that we cover all of your liability in which you're acting as a real estate manager. That's the distinction. So you're saying there's some rule of law that says this has to be two policies instead of one? I mean, is that what you're contending, that it's improper to put the home office coverage in the same policy as the real estate management? It's not improper. What I'm saying is that they bargained to purchase insurance from Attain to cover all of their liabilities as a property manager and to cover their liability in their home office.  Well, it was much more. I mean, it was... It was double the one property. Approximately double, but it increased... So why isn't it 300 times as much? I don't understand how that... Well, they increased, they increased the premium every time that, every year, when Sarah Pacific said we're managing 300 properties this year, and the next year they managed 400 properties, for instance. The premium went up. I mean, how, why didn't, why didn't your, the Lees buy insurance from them if it cost one-hundredth the fraction of the amount of insured property? I don't understand how that could be. How you can get a double premium for hundreds of properties if the coverage is the same as what they got from your company? I would submit that Sierra Pacific, as the purchaser of the insured here, believed that it was purchasing an Attain policy that covered their liability in managing all of their properties. And they didn't give a wit about, you know, Attain putting language into their endorsement, which would, in effect, cheat the, another carrier that provided coverage to their co-insured by virtue of language in their policy. So the insured is not the one that gets cheated when these excess endorsements act as an escape clause. It's the other, or insurance company. When, when your contract for California Capital was entered for the policy with Sierra Pacific, did California Capital look at the Attain policy? Did it ask for proof that there was other primary insurance? At the time it was written. I don't believe so, because it was. So then how were you cheated? How was California Capital cheated when it didn't even know if they had other insurance? Because in California we have an equitable contribution rule, which when two, the general rule is when two primary carriers cover the same risk, they, they pay a pro-rata share. But if you didn't even know, then you couldn't have put it into the amount you were charging. You didn't even know whether they had a policy or not. So I don't see how that leads you to be cheated. And, and, and you just said the client, the, the people insured aren't being cheated either. So no one's cheated. I, I'm a little confused how, how anyone is cheated here. California Capital gets cheated out of their, out of having another carrier share in the risk. Now I, I would submit to you that the reason that California Capital's policy includes language that insures the, the owner's manager is for those situations in which the manager is, goes bare and has no insurance. But when they do have insurance, then California's public policy regarding equitable contribution then trumps all of this policy language. In fact, Your Honor, I, I, as an example, California Capital's policy has another insurance clause too on page six. You're down to two minutes and you wanted to reserve five. Do you want to save the rest of your time? Yeah, let me, let me just get this point in real quickly. California Capital's policy says if there is other insurance covering the same loss, we will pay only the amount of coverage or loss in excess of the amount due from that other insurance. It had competing clauses. So if, if both carriers were strictly construing these as the court did for obtain in this case, then there'd be a standoff between the carriers. You defend, no you defend, no you defend. And, and that, that only hurts the insured. Good morning, Your Honors. Gail Stargardner for Attain Specialty Insurance Company. I want to talk first about this notion that Attain is somehow cheap. I'm sorry. Let me just, should you only have ten minutes on your clock or what's happening with the release? I have seven minutes, Your Honor. You've given them eight minutes. Well, I guess seven and a half. Okay. Okay. So, okay. So I can go to seven. All right. This notion of cheating, there is no cheating. California Capital issued a standard ISO form policy under which Sierra Pacific Management Company isn't insured by definition. They intended to cover them. It's not like they were an additional insured. The intent was always to cover them. They never required Sierra Pacific to have its own insurance. They never asked if they had proof of insurance. If they truly wanted to be excess, as Attain wanted to be, they could have added a similar provision in their policy. They chose not to do so. The Attain policy only makes Sierra Pacific Management Company excess in those situations where its liability arises out of its property management services. And when Attain wrote this policy, they specifically required Sierra Pacific to provide copies of contracts showing that it was named as an additional insured under these other policies. And what they bargained for was that was not a risk they were accepting, that that was the risk that was accepted by California Capital. This is broader, though. Do you agree that this is broader than any case, at least, that's been in the briefs in this situation? It is broader than the fact scenario when Hartford, but it is not as broad as they phrase it. So, for example, they would like you to believe that it wipes out any liability arising out of Sierra Pacific's liability when it might be on property that it manages. But that's not the case. The specific liability that is limited is when they're sued for liability arising out of their management services. So, for example, if my property manager is on the lease property, he gets out of his car to do something, and he realizes, oh, I forgot something in my car, and he turns around and he runs and he hits a woman, knocks her over, and she's carrying a priceless vase and she breaks her legs, the attain policy is primary, because that liability doesn't arise out of his property management services. It's general negligence. So we pay for the bodily injury to her leg, we pay for the property damage to the vase. And, correct, we provide lots of other insurance. For example, if on the premises that they own out of which they run their offices, they enter into a contract to remodel, and they request to be covered as an A.I. under the general contractor's policy, and something happens and another tenant is injured, we're primary in those instances. So there are a lot of risks that attain covers, just not this one narrow risk. And you're correct. The premium, the comparison of premium is a red herring, because if you look at the documents presented in the motion for summary judgment, if you look at the underwriter's testimony, what the premium was charged for did not include the property management services per se. Oh, wait. Then I've misunderstood something. I thought that the comparison of premiums helped your position. It does. It does, Your Honor, because they're arguing that you have to look at the premium to gauge what attain was covering is a red herring, because, Your Honor, you are correct. Had attain intended to cover the liability arising out of their property management using CCIC's figure, their policy would have cost $1.2 million. So what were you saying is misleading? I don't understand. Oh, I was saying their argument. I'm sorry. It was less than clear. Their argument, Your Honor, that you could compare premium, and because my premium was double, it meant that attain intended to cover this risk, that's simply illogical, because the math doesn't work. It would have had to be a lot more than double. Correct. Correct. So what do you think the California Supreme Court's rule should be? I think the California Court's rule should be exactly as what was stated in the Hartford decision, where you have a narrow exception, as in here, that excludes one particular risk, where the parties acknowledge that that risk was going to be excluded, both the insurance company and the property owner and the property manager, which is true in this case, then the exception is enforced. Well, yes, but here you have the one particular risk, in your words, happens to be all of the business operations of the insurer. See, I don't believe it is all of the business operations. How about most? It's a good part of them, Your Honor. But again, you have to look at what are the intent of the parties. And CCIC clearly intended to cover the property manager as an insured under the policy. They're an insured by definition. They accepted the risk. They could have taken steps to narrow their exposure. They failed to do so. The Lees and Sierra Pacific entered into a contract whereby the Lees agreed to indemnify Sierra Pacific. The parties themselves agreed to this risk. And the real estate property management endorsement simply reflects the risks knowingly accepted by CCIC, the risks knowingly accepted by the Lees when they entered into these agreements. Therefore, I believe we fall squarely within Hartford. So, if we disagree with you that this should be called narrow because of how much of the business operations this covers, would the California Supreme Court rule need to change from what Dart and other cases following it said? Because they talk about narrow. So what do we do if we think your case is not narrow? It's a carve out, but it's not narrow. Would you have the, do you think the California Supreme Court would have a rule that just any carve out that's specific is enough, whether it's broad or narrow? I think the California court would say that we, they would expect, they would respect the provisions written into the policies based on what the expectations of the parties were and based on what the evidence before them supported. In this case, based on the insurance policies themselves, the agreements between the Lees and Sierra Pacific, the carve out position in the attained policy was bargained for, it was anticipated, and it should be enforced. I'd like to, I have one minute left, Your Honors, and I'd like to turn to the anti, what CCI claims is the anti-stacking provision in its policy. Clearly, under California law, that provision is not anti-stacking language. The FMC placed it, court stated that it was not anti-stacking provisions. And only through judicial intervention did the FMC court convert that language into anti-stacking language. If you look, if Your Honors look, what CCIC is asking you to do is to ignore the very rules it sets forth in its, in its policy under the limits and medical expense limits of insurance as to how its policy applies. And they're asking you to specifically ignore the provision that say the limits of the policy apply separately to each consecutive annual period. You cannot ignore that language. This is a long-tail claim. Ms. Daly's exposure to the pigeons occurred over a six-year period. CCIC had policies enforced for those six years period. They all, the limits do not have, the limits stack. There's no anti-stacking language. And therefore, the attained language, the attained policy limits were never triggered. I'm out of time. Thank you so much, Your Honors. Thank you, Counsel. Good morning, and may it please the Court. My name is Ross Knott, and I represent Jerry Lee and Betty Lee, third-party defendants and appellees here. What dog do you have in this fight? That's a great question, Your Honor. CCIC appealed and filed a notice of appeal from the judgment granted to the Lees. However, it seems like much of the fight has been between CCIC. Well, their opening brief specifically said they were not appealing the part of the judgment about the Lees, and that nothing that would happen in this appeal would affect the Lees. So why did you file a brief, and why are you here today? I invited a dismissal. I have a notice of appeal, Your Honor, that identifies a judgment in my clients as appellees, and I invited them. But have you ever heard of a case where the opening brief says we are not contesting this part, and our court reached out and anyway reversed that part? I have not heard one way or the other. I did address the waiver issue in our brief, and out of an abundance of caution until I had a dismissal of the appeal. Yes, it's one thing for CCIC to take that position in a brief. It's another thing to actually give me something I can take to my clients, an enforceable waiver or release of the Lees from any potential... Did you ask them for that? I did, Your Honor. I did. And you're saying that on appeal, even though they put in their brief that they were not contesting your party, they denied that to you? Yes. I asked to be released and have an acknowledgment. I would waive costs in exchange for dismissal of the appeal as to the Lees. And absent not having that, I have to come to this court and defend the issue so that my clients are not then later confronted with a reimbursement claim of $900,000. So yes, I do believe, and I addressed the waiver issue in my brief, but if for some reason it wasn't waived, I do need to address the anti-stacking issue. And I think, frankly, the reasonable expectations of the Lees as policyholders fit squarely with the Continental case. The last page of Continental says a stacking... I still don't really understand why you're going to the merits. They've said they're not trying to get anything from your clients. No one is disputing that. You wrote your answering brief in the reply brief. They didn't contest any of this. It seems to me that you're wasting your clients' money and our time arguing about any of this. I'm very confused about why you think you need to do this, although I guess this issue of whether they wouldn't release is also baffling to me. Your Honor, I understand the Court's concern, and my concern representing the Lees is the notice of appeal at 3214 and 3215 of the record applies to the judgment granted to the Lees. And absent a dismissal of the appeal to that extent to the Lees' judgment received, I feel and felt compelled to address the issue. If the Court is telling me that the issue is moot and no longer involves the Lees, I'm happy to accept that. And on that, I will submit. Thank you. Thank you, Counsel. Thank you, Your Honor. Just to clarify on that point, we offered to put in writing that they shouldn't be part of this appeal. But we didn't want anything we signed to act as a retraction of the issue on the stacking as it pertained to attain. But Mr. Knott didn't want to accept that. He wanted just a full dismissal, and we just didn't want to confront the argument from attain that, well, you've accepted the District Court's holding on the stacking issue, and therefore, you can't argue it any longer. It's quite unfortunate, because it led to them writing a whole brief and appearing here today, all for no reason. It's quite unfortunate. We were very upfront with them that under the procedural posture of this case, they're liable for nothing. Because no matter what this Court does, they're not going to be responsible for any amount of money. So, Your Honor, we submit that the way attain is arguing this case, the general rule that California's public policy is being swallowed up by an exception. And it's getting swallowed up because, as you said, this broad part of it is being swallowed up by the exception about a narrow carve-out. And nowhere in any brief that's been filed before you has anyone ever identified what the particular risk they meant to carve out was when it's dealing with Sierra Pacific, because Sierra Pacific manages properties. That's what they do for a living. Counsel, you're over time. Judge Torre, do you have any further questions for counsel? No, I think everybody's covered more or less what I had in mind. Can I just take, like, a few seconds to just say something about this? Now that I come to think of it, who's arguing now? It's California Capitol. Yeah. Are you saying that in California you cannot write a policy saying we shall be only responsible for excess over-insurance that the main insurer has? No. I think if you write an excess policy, that's what the carrier is, that's the risk the carrier is accepting a premium for. Okay, but you say a policy, but you can't put it as a provision in a regular policy? Correct, Your Honor. If you write a primary policy under the Supreme Court's formulation in DART, if you write a primary policy, you cannot use your other insurance provision to render yourself excess just for the serendipity that other insurance exists for the insured. If you accept the premium, the Supreme Court says you have to share a pro rata, and it's just an equitable formulation that the Supreme Court devised. And that's what we were asking to be enforced here. And that's in Hartford? It's in what? What case holds that? Is it Hartford? DART Insurance versus Commercial Union is the Supreme Court case on that. Okay, thank you. Sure. Just real quickly on the stacking provision. The language that the district court relied on as given to it by Attain uses ellipses to strike out all of the language between the anti-stacking provision and the aggregate limit language all the way down here. If you look at the provision that says that the limits of this policy apply separately to each consecutive annual period, it follows directly after the aggregate limits provision. Thank you, counsel. We will look at the document and we have your argument. You're over time and the case is submitted. Thanks, both sides, for the arguments.
judges: Torruella, Schroeder, Friedland